J-S44004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                     :           PENNSYLVANIA
                                       :
            v.                          :
                                       :
                                     :
NIZIERE JAQUI DEAN              :
                                     :
                Appellant     :    No. 606 MDA 2020

Appeal from the PCRA Order Entered March 12, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006551-2017

BEFORE: BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 23, 2020**

Appellant, Niziere Jaqui Dean, appeals from the order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant alleges that his trial counsel acted ineffectively by not objecting to Appellant's entering what he claims was an involuntary guilty plea. After careful review, we affirm.

The PCRA court summarized the facts and procedural history of Appellant's case, as follows:

> On September 7, 2015, at 2:46 a.m., police officers were dispatched to South Marshall Street in Lancaster City for a report of shots fired, at which time they located Edward Cameron suffering from multiple gunshot wounds. *See* Affidavit of Probable Cause. Cameron was later pronounced deceased. *Id.* Through investigation[,] it was determined that Rahdir Maxton, Kyaire Thompson-Brown ("Thompson-Brown"), and Appellant opened fire on Cameron at close range, resulting in the victim's death. *Id.* On October 10, 2017, charges of criminal homicide and

conspiracy to commit homicide were filed against Appellant.[1] **See** Police Criminal Complaint.

   [1] 18 Pa.C.S.[] § 2501 and 18 Pa.C.S.[] §903 respectively.

On February 22, 2019, Appellant and co-defendant Thompson-Brown appeared before the court to plead guilty pursuant to negotiated agreements. [N.T.] Guilty Plea[, 2/22/19,] at 2-3…. In exchange for the Commonwealth['s] not seeking first-degree murder convictions and life imprisonment, Appellant and Thompson-Brown each pled guilty to third-degree murder and conspiracy to commit third-degree murder, at which time they received concurrent sentences of 15-30 years['] incarceration on each count. **Id.** The sentences imposed were within the standard range of the sentencing guidelines, and for Appellant, the sentence was made concurrent to the state prison sentence he was serving on unrelated charges. **Id.** at 21-23, 37-38. Appellant did not file a post-sentence motion or a direct appeal.

On May 28, 2019, Appellant mailed a letter to the clerk of courts stating he wished to withdraw his guilty plea, in part because his pleading guilty was the only way Thompson-Brown could get an offer and Appellant did not want to force Thompson-Brown into a trial. **See** Letter, 5/28/19. Because the court no longer had jurisdiction, the filing was treated as a *pro se* PCRA [petition].

On June 6, 2019, the court appointed Vincent J. Quinn, Esquire, as PCRA counsel. On September 16, 2019, PCRA counsel filed an amended PCRA [petition] alleging that Appellant's guilty plea was induced by trial counsel's ineffective assistance for: (1) inaccurately advising Appellant he would receive credit for all time served from September 20, 2015[,] if he pled guilty; (2) inaccurately informing Appellant the minimum sentence he could receive was 15 years['] incarceration without telling him the guidelines called for a sentence of 96 months to 20 years; and (3) advising Appellant his guilty plea was the only way Thompson-Brown could receive a negotiated guilty plea and Appellant felt coerced into pleading guilty because of the advice of counsel. **See** Amended [Petition] for [PCRA] Relief.

An evidentiary hearing was held on November 25, 2019. [N.T.] PCRA Hearing[, 11/25/19]…. On March 12, 2020, the PCRA court entered a [Pa.R.Crim.P.] 908 Order and Opinion denying the amended PCRA [petition] after concluding the [petition] was frivolous and wholly lacking in merit.

On March 30, 2020, Appellant filed a Notice of Appeal to the Superior Court. On April 7, 2020, Appellant filed a [Pa.R.A.P. 1925(b) concise] [s]tatement of [e]rrors [c]omplained of on [a]ppeal, claiming that trial counsel was ineffective for failing to object to the Commonwealth's conditioning of the co-defendant's plea agreement upon Appellant's acceptance of the same plea agreement. … Appellant did not pursue his earlier claims that trial counsel was ineffective for inaccurately advising him on time credit, the minimum sentence, and the sentencing guidelines.

PCRA Court Opinion (PCO), 5/11/20, at 1-3 (footnotes, parenthesis, and some citations to the record omitted). On May 11, 2020, the PCRA court filed its Rule 1925(a) opinion.

Herein, Appellant states one issue for our review:

Whether the lower court erred in denying [Appellant's] amended PCRA [petition] when counsel was ineffective by failing to object to the Commonwealth['s] conditioning a co-defendant's plea agreement upon [Appellant's] acceptance of the same plea agreement[,] when such packaged plea agreement was coercive and resulted in [Appellant's] entering an involuntary plea?

Appellant's Brief at 4 (unnecessary capitalization omitted).

To begin, we recognize that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-

determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Additionally, this Court has explained:

A criminal defendant has the right to effective counsel during a plea process as well as during a trial. *Hill v. Lockhart*, 474 U.S. 52 … (1985). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. *Commonwealth v. Allen*, … 732 A.2d 582 ([Pa.] 1999). Where the defendant enters his plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56, … (quoting *McMann v. Richardson*, 397 U.S. 759, 771 … (1970)); *[s]ee also Tollett v. Henderson*, 411 U.S. 258, 267 … (1973) (holding that a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*[]").

*Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002).

Presently, Appellant contends that his trial counsel, Christopher Sarno, Esq., acted ineffectively by not objecting to the Commonwealth's offering Appellant a 'package plea agreement,' by which his co-defendant, Thompson-

Brown, would only receive a plea agreement of 15 to 30 years' incarceration if Appellant also agreed to accept this same deal. *See* Appellant's Brief at 13. Appellant avers that his guilty plea was involuntary because he "was placed in the unenviable position of realizing that [Thompson-Brown's] fate was tied into his acceptance of the plea agreement." *Id.* at 15. Indeed, he claims that Thompson-Brown's attorney told him "that if he would not take the deal of 15 to 30, he was being selfish." *Id.* at 13; *see also* N.T. PCRA Hearing at 25 (Attorney Sarno's acknowledging that Thompson-Brown's attorney said "[s]omething along [the] lines" of a comment that Appellant was being selfish by wanting to proceed to trial).

Based on these facts, Appellant insists that his decision to plead guilty was involuntary, and premised only on his concern for Thompson-Brown. He concedes that, during his guilty plea colloquy, he "told the [c]ourt that he did not feel coerced at the time of the plea." Appellant's Brief at 16. However, he insists that he "credibly explained" his colloquy responses at the PCRA hearing, *id.*, where he testified:

> [Appellant]: I was just trying to get through the hearing. I wanted to get it over with. I didn't really want to take the deal to begin with. I wanted to go to trial. I expressed that to my attorney on plenty of occasions.

N.T. PCRA Hearing at 42.

Appellant also argues that his colloquy answers are not indicative of the voluntariness of his plea because the court did not ask any questions about "the package nature of []his plea agreement." Appellant's Brief at 17. He

- 5 -

points out that "[t]he [f]ederal [c]ourts in the Third Circuit require that the colloquies made with packaged plea participants be conducted with special care." *Id.* at 19 (citing *U.S. v. Hall*, 515 F.3d 186, 194 (3d Cir. 2008)). According to Appellant, "[t]he [c]ourts in Pennsylvania should follow the Third Circuit's reasoning" and, because the trial court in his case did not, "the colloquy was defective." *Id.*

Initially, Appellant has waived his argument that his plea was involuntary because the trial court did not specifically colloquy him in accordance with the federal standard in *Hall*. Appellant could have attacked the validity of his guilty plea on this basis in an appeal from his judgment of sentence, but he failed to do so. *See* 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding."). Appellant does not frame this claim as a challenge to Attorney Sarno's effectiveness.

Even if he had, this Court recently rejected, in an unpublished decision that we find persuasive, a similar claim that counsel should have objected to an allegedly inadequate plea colloquy involving a "package deal" plea. *See Commonwealth v. Sullivan*, 985 WDA 2018, unpublished memorandum at *3 (Pa. Super. filed June 11, 2019); *see also* Pa.R.A.P. 126(b) (stating that unpublished, non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). Citing *Hall*, the *Sullivan* panel acknowledged that "federal courts in the Third Circuit 'require that (1)

package plea deals be disclosed to the court and (2) colloquies with package plea participants be conducted with special care.'" ***Sullivan***, 985 WDA 2018, unpublished memorandum at *3. However, we stressed in ***Sullivan*** that "there is no analogous rule in Pennsylvania." ***Id.*** We also observed that Sullivan had been subjected to an extensive colloquy at the time of his plea, which, along with his lengthy consultations with his counsel, demonstrated that he "knowingly, voluntarily, and willingly" chose to waive his right to a trial. ***Id.*** Moreover, we stressed that the evidence against Sullivan was "damning" and the record did not support his insistence that "saving" his co-conspirator was his "primary consideration when he accepted [the] plea offer." ***Id.*** at *4.

As in ***Sullivan***, here, Appellant was put through an extensive colloquy to discern whether his decision not to plead guilty was voluntary, knowing, and intelligent. The PCRA court summarized the information provided by Appellant during the colloquy, as follows:

> In the present case, Appellant stated during the guilty plea hearing that he graduated from high school, he could read, write, and understand the English language, he has never been diagnosed with mental illness, he was not taking any prescribed medications, and he had a full understanding of the proceedings. N.T. [Guilty Plea] at 6-7. After the prosecutor recited the terms of the plea agreement, Appellant confirmed it was his intent to plead guilty to third-degree murder and conspiracy to commit third-degree murder. ***Id.*** at 2-3, 26. The following occurred:

> THE COURT: You understand that if we proceed to trial a week from Monday, the Commonwealth would be pursuing a first-degree murder conviction?

> [Appellant]: Yes, sir.

THE COURT: And do you understand if the jury came back [with a verdict of] first[-]degree [murder], you would be sentenced to life imprisonment without parole?

[Appellant]: Yes, sir.

THE COURT: Is that why you are accepting this deal today, to avoid that possibility?

[Appellant]: Yes, sir.

[*Id.*] at 26.

The court reviewed the documents[,] which listed the terms, conditions, and nature of the plea agreement. [*Id.*] at 22. Appellant acknowledged his signature appeared on the plea agreement form, he understood the terms of the guilty plea, he was agreeing to the terms of the plea agreement, and no other promises had been made to him as to the sentence he would receive. *Id.* at 22-23.[5] Appellant further admitted it was his signature on a seven-page Guilty Plea Colloquy and Post[-]Sentence Rights form, he [had] reviewed all of the rights contained therein with trial counsel before the guilty plea, and he understood those rights. *Id.* at 4-5.[6]

[5] Trial counsel and the Commonwealth noted that while it was not on the plea agreement form, the sentence would be concurrent to the sentence Appellant was already serving in state prison on an unrelated charge, and Appellant would receive credit for time served from the date bail was set. [*Id.*] at 23. Appellant stated he understood this was part of the agreement. *Id.*

[6] In the written colloquy form, Appellant acknowledged he understood he did not have to plead guilty, he had the right to a jury trial, the Commonwealth would be required to prove his guilt beyond a reasonable doubt, he would be presumed to be innocent, he reviewed the sentencing guidelines and maximum sentences with his attorney, he was giving up his right to trial by pleading guilty, he was entering a negotiated plea agreement with the district attorney, he understood the terms of the plea agreement, it was his decision to plead guilty, he was not threatened or forced to plead guilty, he was making this decision of his own free will, he had sufficient time to review all information with his attorney, and he understood his guilty plea would

- 8 -

have the same effect as a conviction by judge or jury. **See** Guilty Plea Colloquy and Post-Sentence Rights Form.

Additionally, the court conducted a thorough oral colloquy with Appellant about all of his legal rights. [**Id.**] at 7-9.[7] After reviewing these rights, Appellant acknowledged he was giving up his right to trial by pleading guilty. **Id.** at 10. Later, the following exchange occurred:

THE COURT: And [Appellant], whose decision is it for you to plead guilty?

[Appellant]: Mine, sir.

THE COURT: Have you made this decision of your own free will?

[Appellant]: Yes, sir.

THE COURT: Has anyone forced, threatened or coerced you to get you to plead guilty?

[Appellant]: No, sir.

[**Id.**] at 29.

[7] Trial counsel stated he reviewed all of the rights contained on the guilty plea colloquy and post-sentence rights form with Appellant, counsel was satisfied Appellant understood all of his rights, and this was a knowing, intelligent, voluntary guilty plea on the part of Appellant. [**Id.**] at 10.

The court reviewed the four possible verdicts the jury could reach in this case, including not guilty or guilty of first-degree murder, third-degree murder, or manslaughter. [**Id.**] at 13. The court defined malice, distinguished between first and third-degree murder, and explained the Commonwealth's burden of disproving self-defense beyond a reasonable doubt if such a defense was raised by Appellant. **Id.** at 13-16. Appellant acknowledged he discussed the possibility of self-defense, manslaughter, and a not guilty verdict with his attorney. **Id.** at 15.

The court then reviewed the elements of third-degree murder and conspiracy to commit third-degree murder, and Appellant stated he understood the nature of the charges for which he was pleading guilty. [**Id.**] at 16-19. Furthermore,

Appellant agreed that by pleading guilty he was admitting he committed the crimes. *Id.* at 19-20.

Appellant understood he could go to jail for up to 40 years on each count and up to 80 years if the sentences were imposed consecutive to one another. [*Id.*] at 20. Appellant also acknowledged reviewing the sentencing guidelines worksheet with his attorney, which listed a recommended minimum sentence of between 96 months['] and 20 years['] incarceration for third-degree murder. *Id.* at 21. Appellant understood the minimum sentence the court was being asked to impose was within the standard range of the sentencing guidelines. *Id.* at 21-22.

Of relevance to Appellant's claim of ineffective assistance of trial counsel, the court specifically questioned Appellant about his legal representation, whether he reviewed all discovery in the case, and whether he was satisfied with trial counsel:

THE COURT: Did you also review the police reports in this case?

[Appellant]: Yes, sir.

THE COURT: And you discussed different options with your attorney, including going to trial?

[Appellant]: Yes, sir.

THE COURT: Are you satisfied with the representation of your attorney?

[Appellant]: Yes, sir.

[*Id.*] at 29-30.

The court informed Appellant that he would have very limited appeal rights if the court accepted the guilty plea. [*Id.*] at 30. One such challenge could be that Appellant's guilty plea was not knowing, intelligent, or voluntary. *Id.* at 30-31. In response, Appellant confirmed his guilty plea was knowing, intelligent, and voluntary. *Id.* at 31.[8]

[8] Trial counsel confirmed that he met with Appellant many times to discuss the case, Appellant was a very intelligent person, and Appellant's decision to plead guilty was knowing and voluntary.

- 10 -

The prosecutor recited the facts of the case, stating that Appellant and his co-defendants all displayed firearms and utilized those firearms to shoot and kill the victim. [*Id.*] at 31-32. The victim sustained at least 13 gunshot wounds. *Id.* at 32. When asked whether he committed these crimes, Appellant responded by stating, "[y]es, sir." *Id.* Appellant then stated he did not have any questions, he did not have anything else to say, and he accepted the sentence. *Id.* at 33, 38-39. The court accepted the guilty plea and imposed a sentence pursuant to the plea agreement after finding Appellant made a knowing, intelligent, and voluntary decision to waive his right to a jury trial and plead guilty. *Id.* at 35, 37.

PCO at 8-11 (parenthesis omitted).

Notably, the PCRA court did not find credible Appellant's testimony at the PCRA hearing in which he disclaimed the truth of his colloquy statements. The court explained:

At the PCRA hearing, Appellant testified that he did not want to plead guilty but felt pressured into doing so for the benefit of his co-defendant. N.T. [PCRA Hearing] at 30-31. However, Appellant acknowledged his testimony contradicted what he said at the time of the guilty plea, and the court did not find his testimony credible. *Id.* at 38-42. Appellant also stated he lied to the court during his guilty plea because he was just trying to get through the hearing. *Id.* at 42-44. However, Appellant failed to explain why he was more concerned about his co-defendant than in asserting his right to a trial, and the court did not find this explanation credible. *Id.* at 44.

Appellant is bound by the statements he made at the guilty plea, where he admitted he was guilty, he was accepting the deal to avoid the possibility of life imprisonment if convicted of first-degree murder, he was satisfied with trial counsel, his plea was voluntary, it was his decision to plead guilty, and he was not forced, threatened or coerced into pleading guilty. Appellant may not assert grounds for withdrawing his plea that contradict those statements.

PCO at 11-12 (footnote and parenthesis omitted).

In addition, the PCRA court rejected Appellant's assertion that he pled guilty only out of concern for Thompson-Brown's fate. The court relied on the fact that, at the PCRA hearing, Attorney Sarno testified

> that Appellant wanted to take the plea of his own volition. N.T. [PCRA Hearing] at 12. According to counsel, the Commonwealth initially offered a sentence of 25-50 years['] incarceration. *Id.* Appellant wanted an offer of 10-20 years, but counsel believed Appellant would be willing to take a deal of 12-24 years. *Id.* Counsel stated that as the parties continued negotiating, Appellant agreed to a sentence of 15-30 years['] incarceration because this was as low as the Commonwealth would go. *Id.*

PCO at 12 (parenthesis omitted). Ultimately, the PCRA court concluded that, "[a]s in *Sullivan*, Appellant tendered a knowing, voluntary, and intelligent guilty plea pursuant to the requirements of Pa.R.Crim.P 590, and there is no support in the record for Appellant's claim that his primary consideration when he accepted the plea offer was saving his co-conspirator." *Id.*

Finally, the PCRA court discerned that Attorney Sarno had acted reasonably by not objecting to Appellant's entering a guilty plea. The court explained:

> Appellant has failed to establish that the particular course of conduct pursued by counsel lacked a reasonable basis designed to effectuate Appellant's interests. Trial counsel negotiated a guilty plea where the potential for life imprisonment on a first-degree murder conviction was removed, the minimum sentence of 15 years['] incarceration for third-degree murder was five years below the top end of the standard range of the sentencing guidelines, the sentences were concurrent with each other, and this sentence was made concurrent to the state prison sentence Appellant was currently serving on an unrelated charge. Counsel's advice in this case was well within the range of competence demanded of attorneys in criminal cases.

*Id.* at 14.

Given the record before us, we conclude that the PCRA court's credibility determinations are amply supported by Appellant's statements during his plea colloquy, and the testimony admitted at the PCRA hearing. Additionally, we discern no legal error in court's finding that Appellant failed to prove that Attorney Sarno rendered ineffective assistance. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/23/2020